UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-cv-22747-MGC

ANDRES GOMEZ, on his own and on behalf
of all other individuals similarly situated,

      Plaintiff,

vs.

GENERAL NUTRITION CORPORATION,

      Defendant.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW
[Filed concurrently with Separate Statement of Material Facts;
Affidavit of Andres Gomez; Request for Judicial Notice]

Plaintiff, Andres Gomez, ("Gomez" or "Plaintiff") by his attorneys, moves pursuant to Fed. R. Civ. P. 56(c) for summary judgment against Defendant, General Nutrition Corporation ("GNC" or "Defendant").

## INTRODUCTION

Plaintiff, ANDRES GOMEZ ("Plaintiff") brought this action against GENERAL NUTRITION CORPORATION ("GNC") or ("Defendant") for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* (the "ADA"). Defendant violated the ADA by failing to provide access for Plaintiff, a permanently blind individual who uses a screen reader in order to access the internet and read website content, with access to its website, GNC.com. This matter is easily resolvable on a Motion for Summary Judgment because each of the

following facts are not — and indeed cannot be — disputed: (1) Defendant admits that its retail stores are public accommodations within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7) and that it offers its goods and services to consumers on and through its Website. *See* Plaintiff's Statement of Material Facts ¶¶ 4, 6. (2) Plaintiff is a permanently blind person who uses a screen reader in order to access the internet and read website content, and thus is a disabled person within the meaning of the ADA. *See* Plaintiff's Statement of Material Facts ¶¶ 2, 3. (3) When Plaintiff visited Defendant's website, GNC.com, in anticipation of a visit to Defendant's physical location in South Florida, he encountered numerous barriers to his use of the website in violation of Title III of the ADA, including 42 U.S.C. § 12182(a) *&* (b)(2)(A)(iii), 28 C.F.R. § 36.201(a), 28 C.F.R. § 36.303. *See* Plaintiff's Statement of Material Facts ¶¶ 8 through 16. These violations prevented Plaintiff from accessing the Website, learning the proximate location, adding items to shopping cart among other activities that non-vision impaired persons are able to do; and (4) Plaintiff is entitled to injunctive relief under the ADA as Plaintiff intends to go back to GNC's Website and intends to visit its physical location. *See* Plaintiff's Statement of Material Facts ¶¶ 16, 17.

For all of these reasons, this Court should grant summary judgment in favor of Plaintiff. In the alternative, this Court should grant summary for violations of the ADA, for each of the specified reasons set forth above.

Plaintiff

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff separately filed its S.D. Fla. Loc. R. 56.1(a) Statement of Material Facts in Support of its Motion for Summary Judgment and incorporates it as if fully set forth herein.

## LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard for Summary Judgment and Summary Adjudication

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). To satisfy this burden, the movant must point out to the Court that "there is an absence of evidence to support the nonmoving party's case." Id., at 325. After the movant meets its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings," but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). So long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See, e.g., *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505 (1986). "A

mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577. A factual dispute is genuine only "if the evidence is such that a reasonable factfinder could return a verdict" for the non-moving party. *Danskine v. Miami Dade Fire Dept.*, 253 F. 3d 1288, 1292-93 (11th Cir. 2001), citing *United States v. Four Parcels of Real Property,* 941 F. 2d 1428, 1437 (11th Cir. 1991).

### B.  Legal Standard For Prevailing Under The ADA

A plaintiff has standing to bring a claim if the following three elements are met: (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

In order to obtain injunctive relief, a party must also show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future. *Wooden v. Bd. of Regents of Univ. System of Georgia*, 247 F.3d 1262, 1283 (11th Cir. 2001).

A plaintiff's allegation that he intends on visiting the subject premises in the near future is sufficient to establish standing to seek injunctive relief under the ADA. See *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir. 2000) (holding that allegation that the plaintiff would take another cruise aboard the defendant's ship in the near future was sufficient to properly plead standing to seek injunctive relief under the ADA).

### I.   FACTUAL BASIS FOR SUMMARY JUDGMENT

### A.  Background of Defendant and Defendant's Website

At all times relevant to this action, Defendant operated "places of public accommodation that are actual physical places. (*See* Plaintiff's Statement of Material Facts ¶ 4.) Defendant's website, GNC.com, provides access to an array of goods and services, retail store locations, product descriptions, and product sales; as such, the website is a heavily-integrated part of the operation of Defendant's retail stores. (*See* Plaintiff's Statement of Material Facts ¶ 6 *referencing* Def. Resp. RFA No. 3 through 6.) Defendant has made no effort to make the website accessible; GNC's "terms and conditions are silent on the issue.[1] *See* Plaintiff's Statement of Material Facts ¶ 21.) GNC has no policies concerning the accessibility of the website. *See* Plaintiff's Statement of Material Facts ¶ 2 *referencing* Defendant's Response to Plaintiff's First Set of Interrogatoreis No. 3 which provided a link to the terms and conditions: http://web.archive.org/web/20120804015949/http://www.gnc.com/helpdesk/index.jsp?display=safety&subdisplay=terms (the link they provided does not address accessibility whatsoever). Defendant makes no substantive analysis or statement regarding whether or not its Website is actually accessible to blind persons; Defendant apparently believes that neither the ADA nor its implementing regulations address accessibility to websites and that this belief is the basis for Defendant's denial of Plaintiff's Request for Admissions regarding the inaccessibility of Defendant's website. *See* Plaintiff's Statement of Material Facts ¶ 23 referencing Defendant's Response to Plaintiff's Second Set of Interrogatories No. 1 through 9 and 11. Furthermore, GNC possesses no documents that measure accessibility of the website. *See* Plaintiff's Statement of

---

[1] *See* Defendant's Response to Plaintiff's First Set of Interrogatories No. 3 which provided a link to the terms and conditions:
http://web.archive.org/web/20120804015949/http://www.gnc.com/helpdesk/index.jsp?display=safety&subdisplay=terms.

Material Facts ¶ 24 *referencing* Defendant's Response to Plaintiff's First Set of Interrogatories No. 3 through 5 and Defendant's Response to Plaintiff' Request for Production No. 6, 8, 9, 10, 14 and 15.   Defendant's Retail Operations Manual is entirely silent as to website accessibility. *See* Plaintiff's Statement of Material Facts ¶ 25 *referencing* Defendant's Response to Plaintiff's Request for Production No. 13.   Defendant has made no effort to make the website accessible; GNC's "terms and conditions are silent on the issue. *See* Plaintiff's Statement of Material Facts ¶ 21 *referencing* Defendant's Response to Plaintiff's First Set of Interrogatoreis No. 3 which provided a link to the terms and conditions: http://web.archive.org/web/20120804015949/http://www.gnc.com/helpdesk/index.jsp?display=safety&subdisplay=terms. Defendant has failed to take measures to become compliant or measure compliant for the last two years. *See* Plaintiff's Statement of Material Facts ¶ 27 *referencing* Defendant's Responses to Plaintiff's Interrogatories No. 3 through 5.

### B.  Background of Plaintiff and His Use for Screen Reading Software

Plaintiff is a blind individual, diagnosed with Amblyopia, Macular Atrophy Epiretinal Membranes with floaters and flashes resulting in loss of vision and metamorphopsia (visual distortion) at 16 years old.  *See* Gomez Affidavit at ¶ 2 .

Despite being permanently blind, I use the Job Access With Speech commonly known as "JAWS", screen-screen reading software program to access the internet and read website content on my computer. My JAWS screen-reading software vocalizes the visual information on my computer and provides the only method by which I, as a blind person, may independently access the internet on my computer.  If websites are not designed to be compatible with screen-reading

software, I cannot fully and independently access websites and the information, products and services contained thereon. *See* Gomez Affidavit at ¶ 3 .

        C.   <u>Plaintiff's Visit to Defendant's Website</u>

On several separate occasions, since 2016, Plaintiff attempted to independently access and do business on GNC.com ("Website"). *See* Gomez Affidavit at ¶ 4 . In June of 2017, Plaintiff tried to independently, access the Website using my JAWS screen-reader because he wanted to find location information, learn about specials or promotions and shop for nutritional products. *See* Gomez Affidavit at ¶ 5. When Plaintiff tried to navigate the homepage, he found it was unable to access it due to graphics, links, and buttons that are not labeled or are incorrectly labeled, or lack alternative text ("Alt-text"). This prevented his screen-reader from accurately vocalizing a description of the graphics, which prevented full and equal navigation. *See* Gomez Affidavit at ¶ 6. He was not able to learn of the special offers due to the existence of long strings of random characters. Throughout the website there were additional unlabeled graphics for other promotions and coupons in the body of the website, that heI could not access with my screen-reader. *See* Gomez Affidavit at ¶ 7. He was not able to find links that directed him to shop, find coupons or find locations. *See* Gomez Affidavit at ¶ 8.When attempting to utilize the store locator function he only heard that there are franchising opportunities but did not hear options for specific locations. *See* Gomez Affidavit at ¶ 9. He was unable to add items to a shopping cart when attempting to do so. *See* Gomez Affidavit at ¶ 10. Additionally, I did not find a statement by GNC on the Website committing to complying with the ADA and providing an accessible website to users of screen-readers who are blind and/or visually impaired. *See* Gomez Affidavit at ¶ 11. The website also did not allow him to adjust the website into a format

that is compatible with my screen reader or the ability to change the size or type of font. *See* Gomez Affidavit at ¶ 12. Plaintiff has attempted to access the Website since, but has encountered the same barriers. It does not appear as if GNC has made any improvements to the the website's accessibility. He continue to experience the same barriers. In addition, despite filing this action, He am still unable to access the Website, which prevented hi, from learning about deals and promotions, finding a nearby location, or learning what nutritional products are available at the GNC physical stores. *See* Gomez Affidavit at ¶ 13.

II.   <u>ANALYSIS UNDER THE ADA</u>

    A.  <u>Plaintiff is Disabled</u>

As a person who is permanently blind (Undisputed Fact No. 3), Plaintiff is clearly a person with a disability as contemplated and defined by the ADA. In amending the ADA, Congress sought in part specifically "to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability should not demand extensive analysis." (42 U.S.C. § 12101 note: Findings and Purposes of ADA Amendments Act of 2008, Pub. L. 110-325, § 2, Sept. 25, 2008, 122 Stat. 3553.)

The ability to see is clearly defined by the ADA as a major life function. (42 U.S.C. § 12102(2).) The ADA defines "disability" as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." (42 U.S.C. § I2102(2).)

Congress requires broad rules of construction for the definition of "disability": "Rules of construction regarding the definition of disability. The definition of "disability" in paragraph (1) shall be construed in accordance with the following: (A) The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act ... (E)(i) The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as — (II) use of assistive technology; (III) reasonable accommodations or auxiliary aids or services ...." (42 U.S.C. § 12102(4).)

It is beyond question that his blindness qualifies Plaintiff as disabled under the ADA; and the fact that he uses aids to assist him with his disability, such as a screen reader for internet websites, does not change that fact. Indeed: "Here, [Plaintiff] blind individual, diagnosed with Amblyopia, Macular Atrophy Epiretinal Membranes with floaters and flashes resulting in loss of vision and metamorphopsia (visual distortion) at 16 years old. See Affidavit of Andres Gomes, 2. Thus, [he] is substantially limited in the major life activity of seeing. Accordingly, [Plaintiff] has established the first element of an ADA claim — [he] is disabled for purposes of the ADA." *(Miller v. Department of Corrections,* 916 F. Supp. 863, 866 (C.D. **III.** 1996).)

### B. Plaintiff Has Either Personally Encountered or Has Actual Knowledge of Defendant's Website's Effective Communication Accessibility Barriers

A plaintiff need not personally encounter each barrier related to his disability to have it removed: "[W]e hold that an ADA plaintiff who establishes standing as to encountered barriers may also sue for injunctive relief as to unencountered barriers related to his disability." *(Chapman v. Pier One Imports (US), Inc.,* 631 F.3d 939, 944 (9th Cir. 2011).) Thus, as long as it

is established that Plaintiff personally encountered at least one barrier interfering with his full and equal enjoyment of Defendant's website unlike non-disabled persons, Plaintiff is entitled to have all of the communication barriers removed by Defendant. Here, Plaintiff encountered Defendant's accessibility barriers on multiple occasions. (*See* Plaintiff's Statement of Material Facts ¶¶ 6 through 13.) Plaintiff has "actual knowledge" of the barriers he alleges impeded his ability to access fully and equally Defendant's locations/website. (*See* Plaintiff's Statement of Material Facts ¶¶ 6 through 13.)

C.  Title III Coverage of GNCs Goods and Services on its Website is Consistent with the Text of the ADA and Congress' Intent

Title III of the ADA broadly prohibits public accommodations from denying individuals with disabilities the opportunity to participate in or benefit from their goods, services, privileges or advantages or from affording individuals with disabilities an unequal opportunity to participate and benefit from the goods, services, privileges or advantages afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(i) and (ii); 28 C.F.R. §§ 36.202(a) and (b). The statute's legislative history indicates this list of public accommodations "should be construed liberally" to afford people with disabilities equal access to the wide variety of establishments available to the non-disabled. *PGA Tour, Inc., v. Martin*, 532 U.S. 661, 676-77 (2001) (expanding the ADA to hold that golf courses, including play areas are places of public accommodation during professional tournaments) (*emphasis added*).

"Public accommodations' have a longstanding obligation to ensure that individuals with disabilities are not excluded, denied services, or treated differently than other individuals because of the absence of auxiliary aids and services, such as accessible electronic technology. This

obligation means that websites of places of public accommodation, such as restaurants, must be accessible to people who are blind, unless the public accommodation can demonstrate that doing so would result in a fundamental alteration or undue burden." *See Exhibit "A", p.2.* (DOJ, the agency directed by Congress to implement regulations… to render technical assistance explaining the responsibilities of covered individuals and institutions … and to enforce Title III in court … are entitled to deference." *Citing Bragdon v. Abbott,* 524 U.S. 624, 646 (1998).)

Auxiliary aids and services include qualified interpreters, notetakers, computer-aided transcription services, written materials, open and closed captioning, and accessible electronic and information technology, among other methods. 28 C.F.R. § 36.303(b). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services where necessary for effective communication, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2).

GNC's stores are place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). GNC's Website is a service, privilege, or advantage of GNC's stores. The Website is a service that is integrated with these locations. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i).) Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> "[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities, unless the entity can demonstrate that
making such modifications would fundamentally alter the nature of such
goods, services, facilities, privileges, advantages or accommodations; and
a failure to take such steps as may be necessary to ensure that no
individual with a disability is excluded, denied services, segregated or
otherwise treated differently than other individuals because of the absence
of auxiliary aids and services, unless the entity can demonstrate that
taking such steps would fundamentally alter the nature of the good,
service, facility, privilege, advantage, or accommodation being offered or
would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text,
and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2)
specifically states that screen-readers are an effective method of making visually delivered
material available to consumers/individuals who are blind or are visually impaired.  Section 28
C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate
auxiliary aids and services where necessary to ensure effective communication with individuals
with disabilities. "In order to be effective, auxiliary aids and services must be provided in
accessible formats, in a timely manner, and in such a way as to protect the privacy and
independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

Thus under the plain language of the statute, Title III applies to discrimination in the
goods and services "of" a place of public accommodation, rather than being limited to those
goods and services provided "at" or "in" a place of public accommodation. 42 U.S.C. §
12182(a); 28 C.F.R. § 36.201(a). This statutory language demonstrates that goods and ser*vices
provided off-site are covered, whether provided via website, the telephone or the mail. See Nat'l
Fed'n of the Blind v. Target Corp.,* 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006) (limiting Title III
to discrimination "occurring on the premises of a public accommodation would contradict the

12

plain language of the statute"). "Whatever goods or services the place [of public accommodation] provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services." See *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000).

Congress intended to include the use of new and evolving technologies by public accommodations and other covered entities in meeting their ADA obligations. The House Committee on Education and Labor stated that it intended "that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times," and that technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required because they would be held to impose undue burdens on such entities." H.R. Rep. No. 101-485, pt. 2, at 108 (1990). "It seems likely that making websites compatible with screen reader software is the kind of advanced technology Congress was envisioning." *See Nat'l Fed'n of the Blind v. Scribd,* 97 F.Supp. 3d 565, 574 (D. Vt. 2015). As such, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations.[2]

Despite Defendant's contention, the fact that the DOJ has not yet implemented technical

[2] See generally Statement of Interest of the *United States, Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic);see also Consent Decree, Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc., No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service). Pursuant to its statutory authority to promulgate regulations to implement Title III of the ADA, on July 26, 2010, DOJ issued an Advanced Notice of Proposed Rulemaking ("ANPRM") on Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, announcing DOJ's interest in developing more specific requirements or technical standards for website accessibility. 75 Fed. Reg. 43,460 (July 26, 2010).

standards does not indicate that the ADA is inapplicable to websites of places of public accommodations.[3]

The DOJ has consistently "taken the position that the ADA applies to the Internet and web-based goods and services providers." *(Scribd, supra,* 97 F. Supp. 3d at 574 (citing Letter from Deval L. Patrick, Assistant Att'y Gen., to Senator Tom Harkin (Sept. 9, 1996) ("Covered entities under the ADA are required to provide effective communication, regardless of whether they generally communicate through print media, audio media, or computerized media such as the Internet"); *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sires: Hearing Before the House Subcommittee on the Constitution of the House Committee on the Judiciary,* 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 26, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations.").) The *Scribd* court noted further that "[t]he DOJ is currently in the process of promulgating regulations that would codify the position it has taken in order to establish requirements for making websites accessible. *See* 75 Fed. Reg. 43460-01." (97 F. Supp. 3d at 574-75.) The DOJ has expressly stated that "the Department has been clear that the ADA applies to Web sites of private entities that meet the definition of 'public accommodations.' 75 Fed. Register 43460, 43464 (July 26, 2010).

---

[3] DOJ reaffirmed its longstanding position that the ADA applies to websites of public accommodations and reiterated, consistent with the preamble to the 1991 regulations… The development is ongoing as further guidance is needed due to inconsistent court decisions and differing technical standards for determining web accessibility. *Id.*

14

The DOJ has filed Statement of Interest briefs in several federal court actions continuing to make its position clear that the ADA *currently* obligates operators of websites to provide effective communication to disabled individuals to ensure equal access to commercial websites. For example, on June 25, 2015, the DOJ filed a Statement of Interest in a case against Harvard University regarding the inaccessibility of Harvard's website in *National Ass 'n of the Deaf, et at v. Harvard University, et at,* Civil Action No. 3:15-cv-30023-MGM [ECF #33] (D. Mass. case filed 2/12/15); Request for Judicial Notice ("RJN") Ex. 1. The DOJ opposed Harvard's motion to dismiss for failure to state a claim and motion to dismiss on jurisdictional grounds. In particular, the DOJ noted that the ADA *"currently* obligate[s] Harvard to provide effective communication to ensure equal access to its online programming services, and resolution of Plaintiff's' claim involves a straightforward application of longstanding statutory and regulatory requirements. For more than two decades, federal courts have resolved effective communication claims brought under the ADA . . . in a wide range of contexts, including claims alleging unequal access to goods, benefits and services provided through websites or other electronic media." (Statement of Interest at 2) (emphasis in original). The DOJ described "the heart of this case" as "a straightforward claim that Harvard failed to provide auxiliary aids or services necessary to ensure effective communication and equal access to Harvard's online programming." *Id.* at 8. The DOJ urged the court to "reject Harvard's attempt to convert a clear-cut ADA claim into something dependent on future rulemaking." *Id.* at 11.[4]

---

[4] The DOJ filed an effectively identical Statement of Interest in a case against Massachusetts Institute of Technology ("MIT") on June 25, 2015. *See National Ass 'n of the Deaf et at v. Massachusetts Institute of Technology, et al.,* Civil Action No. 3:15-cv-30024-MGM [ECF #34] (D. Mass. case filed 2/12/15); RJN Ex. 2.

Similarly, on April 10, 2014 in *New v. Lucky Brand Dungarees Stores, Inc.,* No. 14-CV-20574 (S.D. Fla. case filed Feb. 14, 2014), the DOJ filed a Statement of Interest brief in a recent ADA case brought against the operator of a clothing retail store with point-of-sale devices ("POS"), in which the DOJ took the position that "title III's general prohibition against discrimination on the basis of disability and its requirements to provide auxiliary aids and services where necessary to ensure effective communication establish obligations under the ADA with respect to [defendant's] use of POS devices to provide payment services to its customers." *New v. Lucky Brand Dungarees Stores, Inc.,* No. I4-CV-20574 [ECF No. 19 at 6] (S.D. Fla. Apr. 10, 2014); RJN Ex. 3.[5] Significantly, the DOJ stated:

> [T]he Department has long considered websites to be covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards. See generally Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d 196 (D. Mass 2012), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed of the Blind, et al., United States of America v. HRB Digital LLC and HRB Tax Group, Inc.,* No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website)."

---

5 The DOJ stated that "the absence of specific technical standards or regulatory provisions that directly address a public accommodation's obligation to provide accessible POS devices in no way establishes that the accessibility of POS devices is outside the scope of title III, especially where current regulations incorporate specific obligations for effective communication. *See* 28 C.F.R. § 36.303(a). Until the process of establishing specific technical requirements for POS devices is complete, public accommodations have a degree of flexibility in complying with title III's more general requirements of nondiscrimination and effective communication—but *they still must comply." New v. Lucky Brand Dungarees Stores, Inc.,* No. 14-CV-20574 [ECF No. 19 at 8] (S.D. Fla. Apr. 10, 2014) (emphasis added).

*New v. Lucky Brand Dungarees Stores, Inc.,* No. 14-CV-20574 [ECF No. 19 at 7] (S.D. Fla. Apr. 10, 2014); RJN Ex. 4.

Thus, the DOJ has been actively enforcing the ADA against private operators of inaccessible commercial websites via its Statements of Interest, threatened or actual lawsuits resulting in consent decrees and settlement agreements with private website owners and operators, and other public pronouncements, which are entitled to deference (as explained below in greater detail), *see Moeller v. Taco Bell Corp.,* No. C 02-cv-5849, 2007 WL 2301778, at *11 n.18 (N.D. Cal. Aug. 8, 2007) (giving deference to a DOJ interpretation of ADA standards expressed in an amicus brief filed in another action). Such efforts are not surprising given that "the legislative history of the ADA makes clear that Congress intended the ADA to adapt to changes in technology." *Aretf ix,* 869 F. Supp. 2d at 200-01 (quoting H.R. Rep. 101-48501), at 108 (1990)) ("the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").

The position of the DOJ with respect to the question of whether the ADA statute and its current implementing regulations are currently enforceable against commercial website owners and operators to ensure the accessibility of such websites is entitled to deference in the federal courts, and thus should be respected and deferred to here as well. Specifically, the DOD's views "are entitled to so-called *Skidmore* deference insofar as they 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.' *(Vigil v. Leavitt,* 381 F.3d 826, 835 (9th Cir. 2004) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140

17

(1944)).) Because "'place of public accommodation' is a term defined by statute, not regulation, the DOJ's interpretation that a website with a nexus to a physical place should be given *Skidmore* deference "only to the extent that [it has] `the power to persuade.' *(Bassiri v. Xerox Corp.,* 463 F.3d 927, 930 (9th Cir. 2006) (citing *Christensen v. Harris County* (2000) 529 U.S. 576, 587).) The DOJ's views as to whether or not the ADA covers the websites of public accommodations should be deemed to have the "power to persuade" and are "entitled to respect" under *Skidmore.* Indeed, the Central District of California has previously found the DOJ's interpretation of the ADA on this precise issue to be "persuasive" in *Brown v. BPS Direct, LLC, et al.,* Case No. LACV 14-04622 JAK (JEMx) (C.D. Cal. Oct. 6, 2014) slip op. at 5 n.1 (ECF #30) (Krondstadt, J.) ("The Court also finds persuasive the Department of Justice ("D0J")'s stance that Title III covers the websites of public accommodations."). Even more recently, the District of Vermont applied *Skidmore* deference to the DOJ's "conclusion that the ADA applies to websites covered by one of the categories in the statute." *(Scribd, supra,* 98 F.Supp.3d at 575.)

Thus, under the DOJ's explicit guidance, which is entitled to substantial deference, it is clear that:

- Websites are, in fact, covered by Title III of the ADA regardless of whether specific, technical requirements for websites are in the DOJ's regulations.
- Current regulations incorporate specific obligations for effective communication with disabled persons such as the visually impaired.
- Until the process of establishing specific technical requirements is complete for certain topics, public accommodations must still comply with title III's more general requirements of nondiscrimination and effective communication.

D. The Lack of Specific Regulations Does Not Eliminate The Obligation to Comply

18

<u>with The ADA or Excuse the Failure to Comply with the Mandates of The ADA</u>

Defendants appear to believe that it need not make the Website accessible because neither the ADA nor its implementing regulations address accessibility to websites See Plaintiff's Statement of Material Facts ¶ 23 referencing Defendant's Response to Interrogatories Second Set, No. 1 through 10.  In other words, Defendant claims that the Court and the parties should wait until the DOJ promulgates its final scoping regulations on website accessibility before moving forward with this lawsuit.

To the contrary, when faced with a lack of specific scoping regulations, courts have commonly held that the general accessibility mandate of the ADA applies to websites. The general rule of Title III states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Thus, in circumstances closely akin to those of Plaintiff's here – where the DOJ has not yet promulgated a final rule governing the technical aspects of accessibility – courts have sustained the cause of action under the general accessibility mandate of the ADA set forth above.

*1.*   ***Shields v. Walt Disney Parks and Resorts US Supports Plaintiff's Position***

In *Shields v. Walt Disney Parks and Resorts US, Inc.*, 279 F.R.D. 529(C.D. Cal. 2011). In that published decision, the class of sight-impaired plaintiffs alleged they could not equally access Disney's website. The plaintiffs prevailed on a contested motion for class certification involving a website class comprised of visually impaired individuals. Significantly, the district court in Shields rejected as "unpersuasive" Disney's argument that "there is no accepted accessibility standard" and

the argument that the DOJ has yet to determine what standards to apply to websites. Significantly, the district court stated, "**The lack of a widely accepted standard for website accessibility does not preclude injunctive relief that would improve access to Defendants' websites by the visually impaired."** Id. at 559 (emphasis added.) That case was resolved via a class action settlement in which Disney agreed to follow WCAG 2.0 AA to resolve the matter.

### 2.   The Gil v. Winn-Dixie Stores, Inc. Verdict Strongly Supports Plaintiff's Position

In *Gil v. Winn-Dixie Stores, Inc.,* the court held, after completing a full bench trial, that a defendant Winn-Dixie violated Title III of the ADA by having an inaccessible website. In Winn-Dixie's briefing throughout the case (it filed and lost a MJOP) and in pre-trial filings, Winn-Dixie specifically argued that "without federal regulations in place, there is no clear guidance to a business entity as to what is required for website accessibility." *Gil v. Winn-Dixie Stores, Inc., No. CV 16-23020-CIV, 2017 WL 2547242, at *9 (S.D. Fla. June 12, 2017).* (Joint Pretrial Stip. of 3/17/17 at 3; ECF #34.) Winn-Dixie argued that it "is not required to design its website specifically to integrate with screen reader software under current federal law." Id. Winn-Dixie argued that "under current ADA statutes and regulations, websites are not places of public accommodation." Id. Also, Winn-Dixie's Proposed Findings of Fact and Conclusions of Law asserted, "The DOJ has not issued any accessibility guidelines for internet websites." (Def.'s Prop. FF/CL at 7; ECF #39.) Winn-Dixie also asserted in that filing, "[Plaintiff's] requested modification of Winn-Dixie's website is not reasonable or readily achievable because no legal standards exist for website accessibility . . . ." Id. In addition, Winn-Dixie's Answer alleged as the seventh affirmative defense failure to state a claim because "current federal law does not require Winn-Dixie to implement the policies and procedures demanded by Plaintiff." (Answer at 8; ECF

#7.)   Further, Winn-Dixie's unsuccessful MJOP argued that the DOJ "has not promulgated any rules or regulations to govern website accessibility." (MJOP at 3; ECF #15.)  Winn-Dixie's Reply In Support of MJOP expressly argued that the DOJ had not issued any final or even proposed regulations in response to the DOJ's 2010 issuance of an Advance Notice of Proposed Rulemaking ("ANPRM").   (Reply ISO MJOP at 6-7; ECF #19.)   The foregoing amply demonstrates that the Winn-Dixie court was presented with the argument that the DOJ has not promulgated any specific website standards, but was not persuaded.

### 3.     *Andrews v. Blick Decision Also Strongly Supports Plaintiff's Position*

On August 1, 2017, Eastern District Court Judge Weinstein issued a lengthy 38-page order that, among other points, rejected the primary jurisdiction argument on the basis that it is the court's job to interpret and apply statutes and regulations and the risk of inconsistent rulings is outweighed by plaintiff's right to prompt adjudication of his claim. *Andrews v. Blick Art Materials*, LLC, -- F. Supp. 3d --, No. 17-CV-767, 2017 WL 3278898, at *17-18 (E.D.N.Y. Aug. 1, 2017). The *Blick* court rejected the defendants' due process arguments, stating that no standard set by statute or regulation is needed for the ADA's requirements of "reasonable modifications," "auxiliary aids and services," and "full and equal enjoyment" to apply to website accessibility. Id at *17; 42 U.S.C. § 12182(b)(2)(A)(ii)-(iii). "Blick does not point to any word or term that is unconstitutionally vague. A statute's use of the word "reasonable" and similar terms is not constitutionally problematic." Id.   The *Blick* court rejected defendants' invocation of *Robles v. Domino's* stating:

> "The defendant's principal complaint appears to be that it wants there to be black-and-white rules for ADA compliance, and here, there may be shades of gray. But the anti-discrimination provisions the defendant is accused of violating are not simple checklists of clear-cut rules—they are standards that are meant to

be applied contextually and flexibly. The "gray" the defendant complains of is a feature of the Act."  Id.

The *Blick* court also discussed the long history of the Justice Department's website accessibility rulemaking efforts before concluding that "the court will not delay in adjudicating [plaintiff's] claim on the off-chance the DOJ promptly issues regulations it has contemplated issuing for seven years but has yet to make significant progress on." Id.  D&B makes all the same arguments as *Hobby Lobby*, *Winn Dixie*, *Disney*, and *Blick* that courts rejected, which should also be disregarded here.

### E.  Plaintiff is Entitled to Injunctive Relief Under the ADA

42 U.S.C. § 12188(a)(2) provides for injunctive relief under the ADA, including "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter." Accordingly, injunctive relief mandating the removal of the communication barriers encountered by a plaintiff may be ordered by the Court in appropriate cases.

This is one of those cases. As detailed above, the federal courts have certified classes in actions seeking *injunctive relief under* the ADA with respect to websites. *(See, e.g., Shields, supra,* 279 F.R.D. at 559; *National Federation of the Blind v. Target Corp, supra,* 582 F. Supp. 2d at 1191.) Moreover, the DOJ has entered into consent decrees and settlement agreements with defendants in ADA website cases whereby the defendants agreed to conform their websites to the WCAG 2.0 Guidelines. *(See supra,* at Section Ill-C-3.) With this background, this Court should order Defendant in violation of the ADA to comply with the WCAG 2.0 Guidelines and conform its website to meet the Guidelines.

### CONCLUSION

For the reasons set forth above, this Court should grant this Motion for Summary Judgment.

Dated: January 5, 2018.

Respectfully submitted,

**The Advocacy Group**
Counsel for Plaintiff
333 Las Olas Way, CU3 Suite 311
Fort Lauderdale, Florida 33301
Phone: (954) 282-1858
Email: service@advocacypa.com

*/s/ Jessica L. Kerr*
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record in this action via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jessica L. Kerr*
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810
