UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-cv-22747-MGC

ANDRES GOMEZ, on his own and on behalf
of all other individuals similarly situated,

      Plaintiff,

vs.

GENERAL NUTRITION CORPORATION,

      Defendant.

_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED RESPONSE IN OPPOSITION TO MOTION FOR
ABATEMENT OR STAY PURSUANT TO RULE 56(d)**

[Filed concurrently with Declaration of Jessica L. Kerr in Support of Reply; Objection to the
Affidavit of Joshua Smith; and Objection to the Declaration of Paul Berg]

Plaintiff, through counsel, files his Reply in Support of Motion for Summary Judgment
with Incorporated Response in Opposition to Motion for Abatement or Stay Pursuant to Rule
56(d).

**ARGUMENT**

**A.     The Court May Certify Plaintiff's Class Action Under Rule 23(b)(2) After A
Favorable Ruling On Summary Judgment Because Plaintiff Only Seeks A Single
Injunction Against GNC**

*1.     Class Members Need Not Be Ascertained Under FRCP Rule 23(b)(2)*

"The key to the [Federal Rule of Civil Procedure 23](b)(2) class is the 'indivisible nature

of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can

be enjoined or declared unlawful only as to all of the class members or as to none of them.'"

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2558 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Because the focus in a 23(b)(2) class is more heavily placed on the nature of the remedy sought, and because a remedy obtained by one member will naturally affect the others, the identities of individual class members are less critical in a 23(b)(2) action than in a 23(b)(3) action. *See Wal-Mart*, 131 S. Ct. at 2558 ("When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute.")

Indeed, an Advisory Committee note to Rule 23 notes that "illustrative" examples of a Rule 23(b)(2) class "are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, *usually one whose members are incapable of specific enumeration.*" Fed. R. Civ. P. 23 advisory committee's note (1966) (emphasis added). In light of this guidance, a judicially-created implied requirement of ascertainability— that the members of the class be capable of specific enumeration— is inappropriate for (b)(2) classes. Moreover, the enforcement of the remedy usually does not require individual identification of class members in (b)(2) class actions: "If relief is granted . . . the defendants are legally obligated to comply, and **it is usually unnecessary to define with precision the persons entitled to enforce compliance**, since presumably at least the representative plaintiffs would be available to seek . . . relief if necessary." *Rice v. City of Phila.*, 66 F.R.D. 17, 19 (E.D. Pa. 1974) (emphasis added). S*ee e.g. Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004); *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972); *Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015); *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016).

Here, Plaintiff requests class certification under FRCP Rule 23(b)(2) (Complaint, Prayer for Relief at D.)  Plaintiff further seeks a single remedy: an "*injunction enjoining Defendants from violating the ADA, 42 U.S.C. § 12181 et seq., with respect to its website GNC.com*" and requiring GNC "*to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendants to undertake and complete corrective procedures to the website.*" (Complaint, Prayer for Relief, A–I). Plaintiff's Prayer for Relief requests no monetary compensation for the class, and restitution and damages are not necessary for the class.  The remedy is enjoining Defendant ("GNC") to provide equal access to the website for the class.  The same conclusion in *Cole v. City of Memphis* applies here: "This injunction provides the sole remedy necessary to protect the affected class. The precise identity of each class member need not be ascertained here, particularly given that notice is not required as it would be in a (b)(3) class."  839 F.3d 530, 542 (6th Cir. 2016).

2.    *This Court Has Power To Certify Plaintiff's Class Action Under Rule 23(b)(2) After Ruling On Plaintiff's Summary Judgment Motion*

The notice provisions under FRCP Rule 23(c)(2) exist for the purpose of preventing "one-way intervention." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974) (1966 amendments to Rule 23 responded to criticism that "it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one"); Advisory Committee Notes, 1966 Amendments to Rule 23 ("Under proposed subdivision 23(c)(3), one-way intervention is excluded.").  Not so under FRCP Rule 23(b)(2) where the rule against "one-way intervention" does not apply.

All of the cases GNC cites concern certification under Rule 23(c)(2), not 23(b)(2) as is appropriate here where Plaintiff's requested injunction provides the sole remedy necessary to

protect the affected class; that GNC operates its website "to be fully accessible to and independently usable by Plaintiff and other blind and/or visually-impaired consumers." (Complaint at 2; Prayer for Relief, A–I)

Various courts have found there is "no support for applying the prohibition on one-way intervention to Rule 23(b)(2) class certifications, in which class members may not opt out and therefore make no decision about whether to intervene." *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 433 (6th Cir. 2012) (citing *Paxton v. Union Natl. Bank*, 688 F.2d 552, 558–59 (8th Cir. 1982)). The overriding concern over one-way intervention "legitimately arises only where monetary relief is the sole relief sought, not where . . . injunctive relief was and is so importantly at stake." Where a plaintiff class seeks only declaratory or injunctive relief, certification under Rule 23(b)(2) "readily leads to binding all members of the class to both favorable and unfavorable judgments." *Williams v. Lane*, 129 F.R.D. 636, 640–42 (N.D. Ill. 1990).

Injunctive relief indeed is the most important aspect at stake in this case and is the purpose of this lawsuit. An attempt to ascertain individual blind members of the public for possible damages is not only tertiary to the ultimate goal of injunction (actually fixing the website), but also nominal in the amount a claimant could possibly receive, and therefore an inefficient use of resources that could otherwise be focused on accessibility. 42 U.S.C. § 12188(a)(2) Class certification under Rule 23(b)(2) is possible and appropriate (based on the nature of this case and Plaintiff's Prayer for Relief), the "one-way intervention" doctrine is therefore inapposite, and the court should proceed with summary judgment. While Plaintiff is entitled to move for class certification, he is not required to do so. The timing of the Court's

ruling affects the amount of fees and costs incurred by the Parties.  Ruling on dispositive motions before class certification allows for reduced fees and costs incurred by the Parties and reduces the Court's time presiding over the case, thereby promoting efficiency and economy while encouraging settlement.

**B.     GNC's Rule 56(d) Motion Should Be Denied Because GNC Failed To Conduct Discovery Over Five Months After The Beginning Of This Case**

First, contrary to GNC's Opposition at page 5, nothing in the Court's October 23, 2017, Order Setting Pretrial Deadlines prohibits any party from bringing dispositive motions. ("3. **Pretrial Deadlines**.  The pretrial deadlines are as follows: … [(60) days after the Court's Ruling on Plaintiff's Motion for Class Certification] Dispositive Motion.") (ECF Doc No. 16). This date is a <u>deadline</u> per the Court's order.  GNC is mistaken that the parties *must* to bring dispositive motions in the 60 day window after Plaintiff's Motion for Class Certification.  See also FRCP Rule 56(b) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.")

Furthermore, a court is not required to await the completion of discovery before ruling on a motion for summary judgment, so long as the parties have had an adequate opportunity for discovery. *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990). Additionally, **summary judgment may be appropriate when no discovery has been held**. *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989) (emphasis added) (discussing Rule 56(d)'s predecessor Rule 56(f)). In *Reflectone*, the appellant chose to suspend its discovery efforts pending the resolution of a motion for a protective order, and by the time the opposing party had moved for summary judgment, it had not conducted discovery. *Id.* at

843.  "A court may grant summary judgment without parties having conducted discovery if the court has, in valid exercise of discretion, denied such a motion." *Id.* at 844.

GNC has had more than adequate opportunity for discovery.  Plaintiff filed his complaint on July 24, 2017, (ECF Doc. No. 1) and filed his motion for summary judgment on January 5, 2018 (ECF Doc. No. 18).  More than **five months** have elapsed since the beginning of this case to the instant motion and GNC chose not to conduct any discovery.  Yet Plaintiff was able to complete his own written discovery (propounded on October 18, 2017) and even had enough time to prepare and file a motion for summary judgment based on GNC's responses that essentially admit liability. This court is not required to grant GNC's Rule 56(d) motion simply because GNC failed to conduct or even begin any discovery whatsoever.  *Reflectone*, 862 F.2d 841 at 843.  GNC should not be rewarded for its failure to exercise due diligence.  This Court can and should exercise its valid discretion to deny GNC's Rule 56(d) motion and allow this motion for summary judgment to proceed without delay. *Id.* at 844.

Furthermore, Rule 37(c) provides for the exclusion of later-discovered evidence not initially disclosed in the supplemental discovery responses required by Rule 26(e), as well as the initial disclosures contemplated by Rule 26(a)(1). See *Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998). "Supplementation of discovery responses should not be allowed after the filing of dispositive motions..." *See Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F. Supp. 2d 146, 161 (D. Me. 2003).  A party should not be permitted to avoid summary judgment by placing the necessary information in an affidavit submitted in opposition to a motion for summary judgment. *See Generally Net 2 Press, Inc.*

Plaintiff sent the proposed JSR to GNC on September 1, 2017 and the parties conferred on September 18, 2017 regarding same. (Kerr Decl., ¶ 3) Thus the Parties were free to initiate discovery thereafter.   GNC failed to make any attempt to pursue discovery or notify Plaintiff of its interest and intention to do so prior to filing its Response in Opposition to Plaintiff's Motion for Summary Judgment. (Kerr Decl., ¶ 5)  Settlement discussions never progressed past Plaintiff's offer for an early settlement. (Kerr Decl., ¶ 4)   Plaintiff advised he would proceed with seeking Summary Judgment, yet GNC waited until one week after filing its Response in Opposition to Plaintiff's Motion for Summary Judgment to serve its first set of discovery to Plaintiff. (Kerr Decl., ¶ 5)

Furthermore, GNC's responses to Plaintiff's discovery contradict the position GNC takes in its Response in Opposition to Plaintiff's Motion for Summary Judgment; GNC failed to provide responsive documents or information which would indicate it is in compliance, or that becoming compliant would cause an undue burden.  (Kerr Decl., ¶ 6) Once GNC chose to provide discovery responses which did not include the claims or defenses it now attempts to raise, it opened the door for Plaintiff to seek summary judgment on his claims.

The Court should not permit GNC's attempts to rely on Rule 56(d) to avoid objecting or opposing the substantive claims of Plaintiff's Motion for Summary Judgment.  GNC should not be permitted to correct of change its position by supplementing through affidavits and declarations in response to dispositive motions.  This is especially so, since Plaintiff's request for injunctive relief as to the barriers accessing GNC by and through GNC's website does not require resolution of the class certification prior to a Court determining the relief requested is

legally warranted. *See* Part A above.  (Many of the issues raised by GNC relate to class related discovery.)

> **C.    GNC Must Provide Auxiliary Aids and Services Because GNC Has Failed to Rely Upon Either the Fundamental Alteration Defense or the Undue Burden Defense as an Excuse Not to Do So.**

The ADA expressly defines discrimination on the basis of disability as including "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded denied services, segregated, **or otherwise treated differently** than other individuals because of the **absence of auxiliary aids and services**, unless the entity cans demonstrate that taking such steps would **fundamentally alter** the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an **undue burden.**"  42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added).   Thus GNC can and should provide auxiliary aids or services in accessible formats absent a fundamental alteration or undue burden defense being invoked. 42 U.S.C. § 12182(b)(2)(A)(iii); see also 28 C.F.R. § 36.303(a).   GNC's Opposition fails to make any argument or submit any admissible evidence in regards to either a "fundamental alteration" or "undue burden" defense if a fully accessible website is provided for use by individuals who are either blind or have low vision.   Thus, GNC is required to provide auxiliary aids and services so that blind persons such as Plaintiff are not "treated differently" than sighted individuals.

**D.    GNC Failed To Establish That A Genuine Issue Of Material Fact Exists**

This matter is easily resolvable on a Motion for Summary Judgment because Plaintiff has established all facts necessary to find a violation of the ADA that have not and cannot be disputed. See Plaintiff's Motion for Summary Judgment ("Pl. MSJ") at 2.  In its Opposition to

Plaintiff's Motion for Summary Judgment ("Def. Opp") GNC attempts but fails to identify a single genuine dispute of material fact on the record that prevents summary judgment.

1.   *GNC Has Not And Cannot Dispute That Significant Barriers To Access Existed And Still Exist on the Website*

GNC claims Plaintiff's allegations are about the website in 2016 and the website platform changed in April of 2017.  (Def. Opp at 9)  But the Plaintiff's Statement clearly states that Plaintiff tried to access the website in June of 2017 to find location information, learn about specials and promotions and shop for nutritional products (Statement ¶ 8; Gomez Affidavit ¶ 5) Plaintiff also encountered the same barriers on several occasions since 2016 (Statement ¶ 8, Gomez Affidavit ¶ 5, Complaint ¶ 44).  Moreover, GNC has set forth no material to dispute the barriers Plaintiff encountered in 2016 and June 2017, or that GNC had made any improvements to accessibility from 2016 to June 2017. (Statement ¶ 16; Gomez Affidavit ¶ 13)

GNC claims Plaintiff must provide more specific details about the website he found inaccessible and when.  When Plaintiff tried to access the website on several occasions in 2016 and again June of 2017, due to barriers to access, he could not:

(1)   Navigate the homepage because graphics links and buttons throughout are unlabeled, incorrectly labeled, or lack alternative text (Statement ¶ 9; Gomez Affidavit ¶ 6);

(2)   Learn of special offers on the website because of the additional unlabeled graphics for promotions and coupons in the body of the website (Statement ¶ 9; Gomez Affidavit ¶ 6);

(3)   Access the store location function or hear options for specific locations (Statement ¶ 12; Gomez Affidavit ¶ 9); and

(4)   Add items to a shopping cart to make a purchase. (Statement ¶ 12; Gomez Affidavit ¶ 10)

These barriers to access are specific in time (throughout 2016 and in June 2017) and are specific in substance.  These access barriers establish liability because *essential functions* of the website are unusable to Plaintiff because he is blind.   Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

A violation of the ADA's general equal access and effective communication mandate can be found simply because, due to access barriers on the website, Plaintiff (1) could not learn of special web offers on the website, (2) could not access the store locator, and (3) could not add items to a shopping cart to make a purchase.  Most importantly, however, GNC failed to cite any material that establishes the presence of a genuine dispute of fact as to these barriers identified and encountered by Plaintiff.

GNC claims "there is a question of fact regarding Plaintiff's choice of screen reader program and its interaction with the GNC website." (Def. Opp. At 9).  There is no question of fact that Plaintiff uses the Job Access With Speech ("JAWS") screen reader, and used JAWS to try to access GNC's website. (Statement ¶ 3; Gomez Affidavit ¶ 3) JAWS is the most widely known and popular screen-reading software program available for Windows and has been repeatedly referenced by courts throughout the country. Plaintiff has demonstrated how JAWS

interacted with the website by the significant barriers to access he encountered. GNC's unsupported statement does not create a genuine issue of material fact. *See infra* D.2.

The best GNC offers is another single unsupported statement that "the barriers Plaintiff alleges were in place may have been cured in the normal course of business" (Def. Opp at 9) GNC presented no material in support of its "maybe" statement, which is directly at odds with Plaintiff's material evidence that shows the same barriers on the website existed throughout 2016 and still in June 2017. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker*, 911 F.2d at 1577. A factual dispute is genuine only "if the evidence is such that a reasonable factfinder could return a verdict" for the non-moving party. *Danskine v. Miami Dade Fire Dept.*, 253 F. 3d 1288, 1292-93 (11th Cir. 2001), citing *United States v. Four Parcels of Real Property,* 941 F. 2d 1428, 1437 (11th Cir. 1991). GNC's claim is further attenuated because of its apparent lack of policy or effort for website accessibility, as confirmed by its responses to written discovery. *See infra* C.2. GNC has not met its burden to show that a factual dispute exists as to the website's inaccessibility.

2.    *GNC Made No Effort To Make Its Website Accessible And Has No Policies For Same*

GNC disputes that it has made no effort to make the website accessible. (Def. Opp at 9) GNC's efforts to make the website accessible is not required to show that the website was and is not accessible in violation of the ADA, which Plaintiff has established as undisputed. But it is telling that GNC also cannot show in its Opposition or responses to written discovery it that it took any steps to make its website accessible or that it had any such policies in place. In fact,

GNC impeaches itself in its Opposition with the responses in GNC's response to written

discovery.  For instance, GNC's responded to Special Interrogatory No. 4 as follows:

> "4.     DESCRIBE all DOCUMENTS that measure compliance with YOUR POLICIES CONCERNING ACCESSIBILITY of the WEBSITE for the last two (2) years to the present.
> ANSWER: There are no documents in GNC's possession that measure compliance with policies concerning accessibility of the website for the last two years to the present."

GNC responded to certain Requests for Production of Documents as follows:

> "6.     Produce all DOCUMENTS CONCERNING all actions YOU have taken to make the WEBSITE ACCESSIBLE to visually-impaired users for the last two (2) years to the present.
> ANSWER: There are no documents in GNC's possession concerning all actions GNC has taken to make the website accessible to visually-impaired users for the last two years to the present."

> "9.     Produce all DOCUMENTS CONCERNING to any analysis YOU performed CONCERNING to the ACCESSIBILITY of the WEBSITE for the last two (2) years to the present.
> ANSWER: There are no documents in GNC's possession concerning analysis GNC performed concerning to the accessibility of the website for the last two (2) years to the present."

> "10.    Produce all DOCUMENTS CONCERNING any analysis performed by any PERSON other than YOU CONCERNING the ACCESSIBILITY of the WEBSITE for the last two (2) years to the present.
> ANSWER: There are no documents in GNC's possession concerning any analysis performed by any person other than GNC concerning the accessibility of the website for the last two (2) years to the present."

> "14.    Produce all DOCUMENTS CONCERNING YOUR reports that measure compliance with any of YOUR ACCESSIBILITY POLICIES that apply to the WEBSITE for the last two (2) years to the present.
> ANSWER: There are no documents in GNC's possession concerning reports that measure compliance with any of GNC's accessibility policies that apply to the website for the last two (2) years to the present."

> "15.    Produce all DOCUMENTS CONCERNING any remediation of the WEBSITE for the ACCESSIBILITY of visually-impaired.
> ANSWER: There are no documents in GNC's possession concerning any remediation of the website for the accessibility of visually-impaired."

(*See* Statement ¶¶ 21-27; *see also* Kerr Decl. Exh. A-B.)

GNC's answers to written discovery show that there are no documents concerning analysis, reports, remediation, or compliance to internal policies for the accessibility of its website.  If GNC made an effort to improve the accessibility of its website, there would be documents that show it.

GNC's responded to Special Interrogatory No. 3 as follows:

"3. DESCRIBE YOUR POLICIES CONCERNING the ACCESSIBILITY of the WEBSITE for the last two (2) years to the present.
ANSWER: Please see the attached link to the terms and conditions. http://web.archive.org/web/20120804015949/http://www.gnc.com/helpdesk/index.jsp?display=safety&subdisplay=terms"

(Statement ¶ 26; *see also* Kerr Decl. Exh B)

Notwithstanding GNC's answer to Special Interrogatory No. 3 above is not responsive to the question, GNC makes the brazen claim that "GNC disputes Plaintiff's Statement that the 'terms and conditions are silent on the issue' because Plaintiff fails to define what 'issue' it is referring to." (Def. Opp at 9).  GNC knows very well what the "issue" is: **<u>Nowhere</u> in these terms and conditions are any statements, policy or otherwise, concerning the accessibility of the website.**  Therefore, by GNC's own disclosure, no such policy concerning the accessibility of the website exists. (Statement ¶ 26) (See also Statement ¶ 25) (GNC's Retail Operations Manual is also entirely silent as to website accessibility).

GNC further *"disputes that it has no policies concerning 'accessibility'" and "has a policy that attempts to ensure that alternative text for graphics is available, that background and foreground content has high contrast, and that form controls have text labels. See Affidavit of Joshua Smith ¶ 7, 8."* (Def. Opp at 10).  This is in stark contrast to its discovery responses that

are altogether silent on the issue of a website accessibility policy.  If such a policy existed, then GNC was required to disclose it in its responses to Plaintiff's written discovery.  "If a party fails to provide information [] as required by Rule [26(e)], the party is not allowed to use that information or witness to supply evidence on a motion" FRCP Rule 37(c)(1).  GNC's failure to disclose its accessibility policy until now is "not substantially justified or harmless" when concealed in several responses to written discovery.

GNC may also be sanctioned under FRCP 37(c) for unreasonably denying Requests for Admission and failing to disclose information in response to Plaintiff's Second Set of Interrogatories No. 1 through 9, 11, on the basis that: *"Because the ADA nor its implementing regulations address accessibility to websites GNC denied the request."* (Statement ¶ 24; Kerr Decl., Exh. C). Not so. As an initial matter, the statutory language of the ADA covers commercial websites either via its general non-discrimination provision (42 U.S.C. § 12182(a)), its reasonable modifications provision, (42 U.S.C. § 12182(b)(2)(A)(ii)), and its auxiliary aid provision (42 U.S.C. § 12182(b)(2)(A)(iii)).   As for the DOJ's implementing regulations, Plaintiff is relying upon unambiguous regulations promulgated by the U.S. Department of Justice ("DOJ") decades ago when it issued its original ADA implementing regulations on July 26, 1991 (effective January 26, 1992), Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544, 35555, 35565-35566, 1991 WL 304374 (July 26, 1991), see 28 C.F.R. §§ 36.201(a), 36.303(a) & (c)(1), and updated September 15, 2010, to add the terms "screen reader software," "magnification software," and "accessible electronic and information technology" as examples of required auxiliary aids or services. 28 C.F.R. § 36.303(b)(2), and to add the "privacy and independence" requirements to

28 C.F.R. § 36.303(c)(1)(ii).  Thus, regardless of whether a court analyzes Plaintiff's claim under the ADA's general nondiscrimination statute, 42 U.S.C. § 12182(a), and its general implementing regulation, 28 C.F.R. § 36.201(a), or based on the ADA's specific "auxiliary aids and services" provisions set forth in 42 U.S.C. § 12182(b)(2)(A)(iii) and 28 C.F.R. § 36.303, the statutory and regulatory notice to commercial website owners and operators that their websites needed to comply with the ADA's "full and equal" enjoyment requirement is and has been plain for many years.  GNC's refusal to participate in the discovery process is unsupported by law and GNC should be sanctioned for its misconduct.

Finally, GNC's reference to contact information provided in the terms and conditions page has nothing to do with access to the website or accessibility at all.  As described above, the terms and conditions are entirely silent about website accessibility or policy.  Even clearer is that the contact information is in regard to privacy concerns, not accessibility, as it references "Attn: Privacy Manager" and an email of "privacyconcerns@gnc.com." Furthermore, GNC has waived any argument and submitted no evidence of undue burden to make its website accessible that warrants the use of an alternative communication.  *See* Part C above.

The record clearly shows that GNC has no accessibility policy, has not conducted any analysis to measure compliance with a policy, and has documented no steps to remediate the website.  Even if GNC had an accessibility policy, summary judgment is still warranted because such a policy does not change that there are no genuine issues of material fact in dispute as to GNC's liability under the ADA for having an inaccessible website.

     5.     *Finding Summary Judgment Does Not Now Require The Court To Determine An Appropriate Remedy*

GNC finally argues that Plaintiff has provided no evidence to establish that compliance with the WCAG 2.0 would not be unduly burdensome on GNC.  GNC misunderstands who carries the burden of proof.  As stated in Part C above it is not Plaintiff, but GNC who must demonstrate that altering its website would result in an undue burden.  42 U.S.C. § 12182(b)(2)(A)(iii).  GNC has made no argument and presented no evidence that *any* alterations to the website (let alone WCAG 2.0) would be unduly burdensome.

Regardless, GNC's argument that Plaintiff must prove here that compliance with WCAG for injunctive relief is unfounded because this is a question of *remedy* to be determined after liability is found.  *See e.g. Robles v. Yum! Brands, Inc. d/b/a Pizza Hut*, No. 2:16-cv-08211-ODW(SS) (C.D. Cal. Jan. 25, 2018); *Reed v. CVS Pharmacy, Inc.*, 2017 WL 4457508, at *4 (C.D. Cal. Oct. 3, 2017); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 395 (E.D.N.Y. Aug. 1, 2017); *Access Now, Inc. v. Blue Apron*, LLC, No. 17-cv-116-JL at 21. (C.D. N.H. November 8, 2017) ("[Plaintiffs] rely on Title III of the ADA as governing the GNC's potential liability and invoke compliance with the WCAG 2.0 AA standards as a sufficient condition, but not a necessary condition, for such compliance, and therefore as a potential remedy.") Therefore, WCAG 2.0 AA success criteria standards may be a sufficient, but not a necessary condition for compliance, as a potential remedy after this court determines liability on summary judgment.[1] *See Blue Apron*, No. 17-cv-116-JL at 21.

## CONCLUSION

---

[1] Courts are fully capable of facilitating a functional remedy for web access cases agreeable by all parties. See Memorandum and Order, *Andrews v. Blick Art Materials, LLC*, No. 17-CV-767 (E.D.N.Y. Dec. 21, 2017).  This 36-page order with multiple declarations describes in great detail the website remediation process and how a court can craft a sensible remedy for web access cases that all parties find fair and agreeable.

For the reasons set forth above, this Court should deny Defendant's motion for abatement or stay pursuant to FRCP Rule 56(d) and grant this Motion for Summary Judgment.

Respectfully submitted this 16th day of February, 2018.

Respectfully submitted,

**The Advocacy Group**
Counsel for Plaintiff
200 S.E. 6th Street, Ste. 504
Fort Lauderdale, Florida 33301
Phone: (954) 282-1858
Email: service@advocacypa.com

*/s/ Jessica L. Kerr*
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on counsel of record in this action via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Jessica L. Kerr*
JESSICA L. KERR, ESQ.
Fla. Bar No. 92810