**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

ANDRES GOMEZ, on his own and on behalf )
of all others similarly situated )
)
              Plaintiff, )
) **Case No. 1:17-cv-22747-MGC**
      v. )
)
GENERAL NUTRITION CORPORATION, )
)
             Defendant. )
)

**DEFENDANT'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW NOW THAT DISCOVERY HAS BEEN COMPLETED**

[Filed concurrently with a Defendant's Supplemental Response to

Plaintiff's Statement of Material Facts]

Defendant, General Nutrition Corporation (hereinafter "Defendant"), by and through its undersigned attorney, files this Supplemental Response in Opposition to Plaintiff's Motion for Summary Judgment Now that Discovery Has Been Completed pursuant to this Court's Order Requiring Supplemental Briefing entered on July 18, 2017.

**INTRODUCTION**

On July 25, 2017, Plaintiff, Andres Gomez (hereinafter "Plaintiff") brought this Class Action Lawsuit alleging that GNC's website, www.gnc.com, is not accessible to him as a visually-impaired individual. Plaintiff brought this suit on his own and on behalf of a proposed class of "all legally blind individuals in the United States who have attempted to access GNC.com and as a result have been denied access to the enjoyment of goods and services offered by GNC, during the relevant statutory period."

On January 8, 2018, Plaintiff filed a Motion for Summary Judgment asking this Court to order Defendant in violation of the ADA to comply with the WCAG 2.0 Guidelines and conform its website to meet those Guidelines. Defendant responded on two grounds: (1) that discovery had not concluded and (2) that granting Plaintiff's motion would violate the rule against one-way intervention. Since Defendant's original response extensive discovery has taken place including the deposition of the Plaintiff, the deposition of GNC's Corporate Representative, and expert discovery including reports and depositions. Defendant is now in a position to respond to Plaintiff's Motion for Summary Judgment and does so below. However, Defendant does not waive their original argument that summary judgement would be inappropriate at this time because of the one-way intervention rule because class certification has still not occurred.[1]

### DEFENDANT'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND DEFENDANTS STATEMENT OF MATERIAL FACTS

Defendant separately filed its S.D. Fla. Loc. R. 56.1(a) Defendant's Supplemental Response To Plaintiff's Statement Of Material Facts In Support Of Plaintiff's Motion For Summary Judgment and Defendant's Statement Of Material Facts In Support Of Its Supplemental Response In Opposition To Plaintiff's Motion For Summary Judgement and incorporates it as if fully set forth herein.

### ARGUMENT

A.  Plaintiff is Disabled

Defendant does not dispute that Plaintiff has a qualified disability under the ADA.

B.  Title III Coverage Of GNC's Website Is Not Consistent With The Text Of The ADA, Congress' Intent, or the current DOJ

---

[1] This issue has been fully briefed previously. However, in Plaintiff's Reply they assert that the one-way intervention rule does not apply to this matter because they would be seeking class certification under Federal Rule of Civil Procedure 23(b)(2) which would be correct. However, in Plaintiff's Complaint ¶ 29, 36 and their Prayer for Relief D. Plaintiff states that they would alternatively seek class certification under 12(b)(3) which would be inappropriate because of the one-way intervention rule.

To date, Congress has not expanded the ADA's definition of places of public accommodations to include Internet websites. Similarly, the United States Department of Justice, which enforces the ADA, has not promulgated any rules or regulations to govern website accessibility. On July 26, 2010, the Department of Justice ("DOJ") issued an Advance Notice of Proposed Rulemaking ("ANPRM"), in which it notified the public that it was considering revising the regulations implementing Title III of the ADA and its application to websites.

However, on July 20, 2017, the current administration released its Unified Agenda of Regulatory and Deregulatory Actions, which showed that the DOJ's rulemaking for Titles II and III of the ADA for websites is now inactive. Current Unified Agenda of Regulatory and Deregulatory Actions, Current 2017 Inactive Actions List at 8, available at https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf.

Further, on December 26, 2017, the DOJ withdrew the two previously announced ANPRMs related to the accessibility of Web information and services. Currently, there is no regulation guidance as to whether the ADA even applies to websites, much less as to what specific technical standards are necessary or appropriate if the ADA applies. The DOJ stated that the previous "ANPRMs had no force or effect of law, and no party should rely upon them as presenting the Department of Justice's position on these issues." https://www.federalregister.gov/documents/2017/12/26/2017-27510/nondiscrimination-on-the-basis-of-disability-notice-of-withdrawal-of-four-previously-announced

  C. <u>A Question of Fact Exists as to Whether the Barriers Plaintiff Alleges to Have Encountered on GNC's Website Impeded His Access to the Goods and Services of the GNC Physical Locations</u>

Circuit Courts are split on whether the ADA limits places of public accommodation to physical spaces." *Gil v. Winn-Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1319-20 (S.D. Fla. 2017) (citing competing circuit court decisions). The Eleventh Circuit has not explicitly

addressed the issue of websites but has permitted a Title III claim where the plaintiff can demonstrate that an intangible barrier impedes his ability to access a physical location. *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002). Under *Rendon* there must be a nexus between the challenged service and the premises of the public accommodation." *Gil*, 242 F. Supp. 3d at 1320.

Accordingly, "district courts within the Eleventh Circuit considered this nexus theory and that the ADA *might* apply to a non-physical website where a particular form of discrimination prevents a disabled person from accessing a specific physical location. *Id.*; *see also Haynes*, 2017 WL 4863085, at *5; *Southwest Airlines*, 227 F. Supp. 2d at 1319-21. The court in *Southwest Airlines* did not find a sufficient nexus between the plaintiff's inability to use the defendant airline's website and access to any physical location. Particularly since "the Internet is 'a unique medium—known to its users as 'cyberspace'—located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet.'" *Id.* at 1321 (quoting *Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232, 1237 n.3 (11th Cir. 2001)).

A question of fact exists as to whether Plaintiff's inability to access certain parts of Defendant's website impeded his access to Defendant's physical locations or the goods and services offered therein. Plaintiff will be unsuccessful in his ADA discrimination claim if he is only able to show that Defendant's website denied him access to information about Defendant's public accommodation because "[c]ourts in this district require the website to provide more than information about a defendant's business in order to state a claim under the ADA for website inaccessibility." *Haynes v. Pollo Operations, Inc.*, No. 17-CV-61003, 2018 WL 1523421, at *2 (S.D. Fla. Mar. 28, 2018); *Gomez v. La Carreta Enterprises, Inc.,* Case No. 17-61195 (S.D. Fla. Dec. 6, 2017).

First, prior to ever visiting the GNC website, Plaintiff had visited Defendant's brick and mortar stores and purchased items. Plaintiff's Deposition pg 63 line 3-18, pg 64 line 11-14. Thus, regardless of the existence of the website, Gomez was able to locate a GNC brick and mortar store and patronize them during business hours.

When Plaintiff went to the GNC website for the first time in 2017 Plaintiff was treating GNC.com as an independent E-commerce website. Plaintiff went to the home page, located a product he wanted, attempted to add it to his cart, and did not do anything else. Plaintiff's Deposition p 78, line 5-12. Plaintiff chose to attempt to buy a product online as opposed to going to the brick and mortar store because it was faster and more convenient for him to do it from his house. Plaintiff's Deposition pg. 82 line 20-25. Plaintiff's notes that were created contemporaneously with his utilization of the website in no way mentions using the store locator. Plaintiff's Deposition p 69, line 4-25, Exhibit A to Plaintiff's Statement of Material Facts.

Gomez has not submitted any record evidence that GNC's website is a barrier to his access of GNC's brick and mortar stores and the goods and services contained therein. Therefore, even if GNC's website was completely inaccessible to Gomez, he has failed to show discrimination or a violation of the ADA by GNC to its public places of accommodation. Accordingly, Gomez's Motion for Summary Judgment should be denied.

> D. <u>Though There Is A Lack Of Specific Regulations GNC Takes Commercially Reasonable Steps, Subject To Feasibility And Undue Expense, To Improve The Accessibility of the GNC Website To Visually Impaired Individuals Using Screen Readers.</u>

In November 2016, Defendant was sued in the Western District of Pennsylvania in a nearly identical lawsuit to this Action, also alleging that Defendant's website (www.gnc.com) was not equally accessible to blind and visually impaired consumers. See *Frazier et al v. GNC Holdings, INC* 2:16-cv-01681 and *Consolidated Case Gathers et al v. New York & Company, Inc.*, Civ Docket No. 2:16-01375. ("*Frazier* Action") The *Frazier* Action was settled December

5

20, 2016. A joint stipulation of dismissal was filed on January 26, 2017 and approved by the court on January 27, 2017. See Civ Docket No. 2:16-01375.

As part of the Settlement agreement in the *Frazier* action, Defendant agreed to:

> 13. Company shall take the following actions with regard to its Website:
>
>     a. Company shall take commercially reasonable steps, subject to feasibility and undue expense, to improve the accessibility to blind individuals using screen readers of the U.S. portion of the Website to the extent required by the ADA. Company may use WCAG 2.0 Level AA or other applicable authorities as a reference in making such improvements to the Websites, with the further understanding that if the applicable enforcement agency adopts a standard, this paragraph will be of no further effect, and Company may take commercially reasonable steps, subject to feasibility and undue expense, to comply with such standard once such standard is in effect and following any applicable grace period(s) issued by such enforcement agency.

Accordingly, per the terms of the settlement agreement in the Fraizer Action, Defendant agreed to "improve accessibility" of its website and has since taken commercially reasonable steps to do so. 36. GNC implemented a policy take commercially reasonable steps, subject to feasibility and undue expense, to improve the accessibility to blind individuals using screen readers. Dolegowski Deposition Pg 27 Line 8-18.

GNC has a current policy and works with its employees and third party contractors to attempt to ensure that alternative text for graphics is available, that background and foreground content has high contrast, and that form controls have text labels for its content on its website www.GNC.com. See Affidavit of Joshua Smith, ¶ 8. Dolegowski Corp Deposition Pg 41, Line 8-23.

GNC measures compliance by running automated accessibility tests such as AChecker and WAVE to measure accessibility. Dolegowski Corp Deposition Pg 37 line 5- Pg 38 line 9. This is done every time a "sprint" is implemented. Which is a collection of changes that occurs to the website. Which typically occur every two weeks. Dolegowski Corp Deposition Pg 38 Lines 12-

18, pg 39 line 12-13, pg 40 line 19-22. If an error is detected when one of the automated accessibility test is done, a work ticket known as a GERA ticket is created, then during a grooming session the next morning an analysis of reasonable cost and use and feasibility associated with making the remediation is discussed. Dolegowski Corp Deposition Pg 58 line 13-22. Then the remediation of the identified errors is distributed amongst employees at GNC or a third party. Dolegowski Corp Deposition Pg 59 line 2-5.

  E. <u>A Question of Fact Exists As To Whether Plaintiff is Entitled to Injunctive Relief Because the Barriers Plaintiff Alleged to Have Encountered May Have Been Entirely Remediated and Therefore the Case May Be Moot</u>

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.' " *Id.*

In the context of a claim alleging barriers to access under Title III of the ADA, "if an ADA 'plaintiff [has] already received everything to which [he] would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that plaintiff will again be subjected to the same wrongful conduct by this defendant.'" Fla. Ass'n of Rehab. Facilities, Inc, 225 F.3d at 1175 (citing Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065 (D. Hawaii 2000).

Recently, in a similar case, a plaintiff brought action against a restaurant owner under the Americans with Disabilities Act (ADA), alleging that its website was inaccessible to visually-impaired individuals because it was incompatible with screen reader software. The district court dismissed the case as moot due to settlement with remediation plan that was entered in a previously filed, almost identical website accessibility lawsuit. *Haynes v. Hooters of Am.*, LLC,

No. CV 17-60663-CIV, 2017 WL 2579044, at *1 (S.D. Fla. June 14, 2017). Plaintiff appealed. The Eleventh Circuit held that a live case or controversy was not rendered moot by settlement in almost identical earlier-filed website-inaccessibility lawsuit; because although owner agreed to remediate pursuant to that settlement agreement, there was nothing indicating that it had successfully done so.  Some of the relief requested by plaintiff remained outstanding and could still be granted by a court.  *Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 785 (11th Cir. 2018).

Here, Defendant is not arguing that our prior settlement agreement makes the entire case moot, but rather there are questions of fact as to whether or not the challenged conditions have been remedied. Defendant has offered evidence of remediation through the testimony of its corporate representative and the testimony its expert.

On at least two separate occasions when automated accessibility tests were run on gnc.com the website was in compliance with WCAG 2.0. See Paul Dolegowski, Expert Witness Deposition, Exhibit 2 and Exhibit 3. As part of Exhibit 2 page 4 are automated accessibility tests results from AChecker and WAVE run on April 13, 2018 showing zero errors and no known problems with www.gnc.com . Exhibit 3 are automated accessibility tests results from AChecker and WAVE run on June 11, 2018 showing zero errors and no known problems with www.gnc.com.

    F.    <u>Plaintiff has Failed To Present Any Evidence that An Injunction For GNC to Comply with the WCAG 2.0 is an Appropriate Remedy</u>

Finally, Plaintiff in his motion asks the court to not only find that there was a violation of the ADA but to order GNC to comply with the WCAG 2.0 Guidelines and conform its website to meet those Guidelines. However, Plaintiff's Statement of Material Facts and Plaintiff's Affidavit provide **NO** support that an injunction to force compliance with the WCAG 2.0 is an appropriate remedy. Plaintiff in his motion makes a conclusory statement without any evidentiary support that "the DOJ has entered into consent decrees and settlement agreements with Defendants in

8

ADA website cases whereby the defendants agreed to conform their websites to the WCAG 2.0 Guidelines." Plaintiff cites to a section of his brief that does not exists to support this statement. However, even if he was able to support that statement with evidence, consent decrees or settlement agreements by other defendants to conform to WCAG 2.0 is not evidence that an injunction by the court that GNC to comply with the WCAG 2.0 Guidelines and conform its website to meet those Guidelines is an appropriate remedy.

Plaintiff believes that a website has to work 100 percent with a screen reader program or it's not accessible. Plaintiff's Deposition pg 34, line 3-6. Defendant already has a policy in place to take commercially reasonable steps, subject to feasibility and undue expense, to improve the accessibility to blind individuals using screen readers of the U.S. portion of the Website to the extent required by the ADA. Company may use WCAG 2.0 Level AA or other applicable authorities as a reference in making such improvements to the Websites.

It is unclear as to what steps GNC would have to take to ensure its website is in "compliance" with the WCAG 2.0 Guidelines if placed under an injunction to do so. By way of example on at least two separate occasions when automated accessibility tests were run on gnc.com the website was in compliance with WCAG 2.0. See Paul Dolegowski, Expert Witness Deposition, Exhibit 2 and Exhibit 3. As part of Exhibit 2 page 4 are automated accessibility tests results from AChecker and WAVE run on April 13, 2018 showing zero errors and no known problems with www.gnc.com . Exhibit 3 are automated accessibility tests results from AChecker and WAVE run on June 11, 2018 showing zero errors and no known problems with www.gnc.com. GNC also has a policy and practice in place to measure and remediate accessibility errors. Dolegowski Corp Deposition Pg 58 line 13- 22 and Pg 59 line 2-5.

A question of fact exists as to whether an injunction for GNC to comply with the WCAG 2.0 Guidelines and conform its website to meet those Guidelines would be an appropriate remedy. Accordingly, Gomez's Motion for Summary Judgment should be denied.

## CONCLUSION

It is respectfully requested that the Court deny Plaintiff's Motion for Summary Judgment.

## CERTIFICATE OF SERVICE

I hereby certify that on 27nd day of July, 2018, I electronically filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: **s/ Paul R. Berg**
FL Bar # 901172
VOCELLE & BERG, LLP
3333 20th Street
Vero Beach, FL 32960
Telephone:    (772) 562-8111
Facsimile:    (772) 562-2870
Email: PBerg@vocelleberg.com
Courtdocs@vocelleberg.com
JGraney@vocelleberg.com