UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 17-22747-Civ-COOKE/GOODMAN**

ANDRES GOMEZ, on his own and
on behalf of all other individuals
similarly situated,

    Plaintiffs,

vs.

GENERAL NUTRITION CORPORATION,

    Defendant.
_____/

**ORDER GRANTING *IN PART* PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

In 1990, Congress passed the Americans with Disability Act to protect people with disabilities from discrimination in places of public accommodation. Since then, a bevy of administrative orders and court decisions have helped businesses understand how to apply the ADA to their brick-and-mortar stores. But as more and more people take their shopping online, regulations have fallen further and further behind. Unsurprisingly, this imbalance results in businesses and their disabled customers disagreeing over what the ADA requires. This case is an example of that. More specifically, this case is about whether and to what extent the ADA applies to websites.

Currently pending before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 18) and Plaintiff's Motion to Exclude the Testimony and Opinions of Paul Dolegowski (ECF No. 57). For the reasons stated below, Plaintiff's Motion for Summary Judgment and Plaintiff's Motion to Exclude are both **GRANTED** *in part*.

**BACKGROUND**

Plaintiff Andres Gomez is legally blind. Compl. ¶ 1, ECF No. 1. To access the internet, Gomez uses a screen reading software program called Job Access With Speech or

1

JAWS. Compl. ¶ 24. Screen readers work best when websites are designed to be compatible with them.

In the summer of 2017, Gomez visited the website of Defendant General Nutrition Company ("GNC"), a place of public accommodation. Pl. Stat. of Mat. Facts ¶ 4, ECF No. 19. The Website allows customers to purchase GNC's goods and services and view any promotions and deals offered at that time. Gomez Dep. 68:16-19. Additionally, the Website provides a store locator. Compl. ¶ 19.

When Gomez visited the Website, however, he could not access many of its features. Compl. ¶ 2. Gomez could not add items to his online shopping cart, access the store locator, or read the deals and promotions. Gomez Dep. 67-69. This difficulty was due, at least in part, to the mislabeling of the online content. McCaffrey Dep. 172:1-8, ECF No. 52-1. Because the website's content was not labeled properly, Gomez's screen reader did not work correctly. Pl.'s Stat. of Mat. Facts ¶ 10. Though the Website did not include a statement regarding GNC's commitment to ADA compliance, the Website did include a link to the terms of conditions. Def.'s Suppl. Resp. in Opp. to Pl.'s Stat. of Mat. Facts ¶ 14-17, ECF No. 51. In turn, the terms and conditions provide a phone number for customers to call if they need additional assistance. *Id*.

GNC regularly updates the Website with the latest deals and promotions. Smith Aff. ¶ 10, ECF No. 27. Gomez admits he has not been back to the Website since 2017 but representatives from both parties have tested the Website for accessibility as recently as June 2018. *See* Dolegowski Dep., Ex. 2 and 3, ECF No. 52-3; *see also* McCaffery Dep. 170:7-9. Defendant's expert tested the Website using the automated accessibility tests AChecker and WAVE. Dolegowski Dep. 20:1-5. The test results returned zero errors and no known problems with the Website. *Id*. Conversely, Gomez's expert found errors that could prevent a user from selecting a product and completing a purchase. *ADASure Website Compliance Audit*, 7-8, ECF No. 54-1; McCaffrey Dep. 170:7-9.

On July 24, 2017, Gomez brought this complaint on behalf of himself and all others similarly situated, seeking injunctive relief.[1] Compl. ¶ 5. On January 2018, Gomez filed this motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*.

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his

---

[1] This, however, is not the first time GNC has been haled into court in regards to its website. Def.'s Suppl. Resp. in Opp. to Pl.'s Mot. Summ. J. 5-6, ECF No. 50. In November 2016, another visually impaired person brought suit against GNC alleging the Website is inaccessible (the "*Frazier* Action"). *Id*. This case settled. As part of the *Frazier* Settlement, GNC agreed to take "commercially reasonable steps…to improve the accessibility to blind individuals using screen readers." *Id*. Moreover, the agreement stated that GNC "may use WCAG 2.0 Level AA or other applicable authorities as a reference in making such improvements to the website." *Id*.

pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)).

When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

As a threshold issue, the Court finds that Gomez has standing to sue for injunctive relief. Article III of the Constitution requires a plaintiff to have suffered an injury in fact; that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In an injunctive suit, a plaintiff must additionally show there is "a sufficient likelihood that he will be [injured] by [such conduct] in the future. *Gaylor v. N. Springs Assocs.*, LLP, 648 F. App'x 807, 811 (11th Cir. 2016).

Gomez plainly satisfies this standard. By facing barriers to access the Website, Gomez suffered a concrete injury. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323 (11th Cir. 2013). And if not addressed, he could suffer that same injury in the future. *Id.* at 1329. Even his status as an ADA "tester" does not affect his Article III standing here. *Id.* at 1334. Therefore, Gomez has standing to sue GNC.

Where a Plaintiff alleges discrimination under Title III of the ADA, she must prove that: 1) she is a disabled individual; 2) the defendant owns, leases, or operates a place of public accommodation; and 3) the defendant discriminated against the plaintiff within the

4

meaning of the ADA. 42 U.S.C. § 12182(a); *see also Caldarola v. Rosner Realty LLC*, No. 13-80493-CIV, 2014 WL 537398, at *3 (S.D. Fla. Feb. 11, 2014). In cases related to an existing building, a plaintiff must show a barrier exists, and its removal is "readily achievable." *GathrightDietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006).

The parties agree that Gomez is a disabled individual within the meaning of the ADA. Pl.'s State. of Mat. Facts ¶ 1. And they agree that GNC's brick and mortar locations are places of public accommodations. *Id.* at ¶ 4. However, several issues remain. Namely: 1) whether the Website is a place of public accommodation, 2) whether GNC has remedied any ADA violations, and 3) whether the Court should fashion a remedy at this point. These are addressed in turn below.

**I.     The Website is a Place of Public Accommodation**

**A. Legal Standard**

*1. Eleventh Circuit Decisions*

Two Eleventh Circuit decisions provide guidance here. In *Rendon*, the Eleventh Circuit addressed whether a contestant hotline for the quiz show *Who Wants to Be a Millionaire* was a place of public accommodation within the meaning of the ADA. *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279 (11th Cir. 2002). The Court found it was. *Id*. In doing so, the court noted that the ADA extended beyond just physical barriers to access:

> "A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers…and <u>intangible barriers</u>, such as eligibility requirements and screening rules or discriminatory policies and procedures <u>that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges</u>." *Id.* at 1283 (emphasis added).

More recently, the Court discussed website accessibility in the context of Dunkin' Donuts' website. *Dennis Haynes v. Dunkin' Donuts LLC, et al.*, No. 18-10373, 2018 WL 3634720 (11th Cir. July 31, 2018). Reasoning plaintiff did not allege a nexus between the

website's barriers and his inability to access goods and services at the physical store, the District Court dismissed the complaint. *Id.* at *1. On appeal, the Eleventh Circuit reversed that decision, finding:

> "the website is a service that facilitates the use of Dunkin' Donuts' shops, which are places of public accommodation. And the ADA is clear that whatever goods and services Dunkin' Donuts offers as part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services are intangible." *Id.* at *2.

### 2. District Court Decisions

District Courts within the Eleventh Circuit agree that the ADA does not apply to a website that is wholly unconnected to a physical location. *Gomez v. Bang & Olufsen Am., Inc.*, No. 16–23801, at 8, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) (Lenard, J.) (holding that a website that is wholly unconnected to a physical location is generally not a place of public accommodation under the ADA). However, the Eleventh Circuit's District Courts have found that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. *Id.* at 9 (citing *Rendon* for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss); *see also Gomez v. J. Lindeberg USA, LLC*, No. 16–22966, at 2–3 (S.D. Fla. Oct. 17, 2016) (Williams, J.) (order granting default judgment in part) (finding that plaintiff stated a claim under the ADA by alleging that the inaccessibility of the defendant's website prevented him from purchasing the defendant's clothing online and searching for physical store locations).

While courts agree a nexus is necessary, few have defined the nexus precisely. Where a website is heavily integrated with physical store locations and operates as a gateway to the physical store locations, courts have found that the website is a service of a public accommodation and is covered by the ADA. *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F.Supp.2d 946, 953–55 (N.D. Cal. 2006); see also *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340, 1348 (S.D. Fla. 2017) (finding defendant's website was a gateway to the physical store locations and, as such, its inaccessibility to visually impaired persons constituted a

violation of the ADA). Essentially, the ADA prohibits a retailer's website from "imped[ing] a disabled person's full use and enjoyment of the brick-and-mortar store." *Gomez v. Bang & Olufsen Am., Inc.*, at *4.

Just providing information may not be enough to establish a nexus. *See e.g. JOEL PRICE, Plaintiff, v. EVERGLADES COLLEGE, INC., Defendant.*, No. 618CV492ORL31GJK, 2018 WL 3428156, at *2 (M.D. Fla. July 16, 2018) (noting "district courts in the Eleventh Circuit have distinguished between an inability to use a website to gain information about a physical location and an inability to use a website that impedes access to enjoy a physical location, holding that the former is insufficient to state a claim"). But the ability to pre-order or purchase products probably creates a sufficient nexus between the website and the physical store. *EMILY FULLER, Plaintiff, v. SMOKING ANYTIME TWO, LLC, Defendant.*, No. 18-CV-60996-UU, 2018 WL 3387692, at *3 (S.D. Fla. July 11, 2018) (denying a motion to dismiss because plaintiff alleged a nexus by alleging "that the website allows users to locate the stores, learn about products offered in the stores, purchase gift cards for use in the stores, obtain discounts for store purchases, and order merchandise for pick-up in the stores").

Taken together, these decisions elucidate a number of overlapping factors to consider in determining whether a website has a sufficient nexus to the physical store. Some of these factors are:

- Whether the website provides a service of the public accommodation like the ability to purchase or preorder products
- Whether the alleged barrier to access prevents the full use and enjoyment of services of the public accommodation
- Whether the website provides more than just information about the store
- Whether the website impedes access to the physical location
- Whether the website facilitates use of the physical stores

### B. As a service that facilitates the use of a physical store, GNC's Website is a place of public accommodation.

GNC's website is a place of public accommodation within the meaning of the ADA. The Website facilitates the use of the physical stores by providing a store locater. Moreover, the ability to purchase products remotely is, in and of itself, a service of the physical stores. By providing information about promotions and deals in addition to information about store information, the Website operates as a gateway to the physical stores.

In other words, GNC provides a basket of services. One of the services is the ability to use the Website to purchase products, learn about sales, and find nearby stores. The inaccessibility of the website amounts to a denial of that service to blind individuals. And denying service to the blind violates the discrimination provisions of ADA.

## II.  GNC's Website has not Remedied the Violations of the ADA

The parties offer competing expert testimony on whether the Website still presents barriers to access. Specifically, GNC's expert opines that GNC may have remediated the issues Gomez faced but his expert believes the Website remains flawed. To decide this issue, the Court now turns to Plaintiff's Motion to Exclude Opinions and Testimony of Paul Dolegowski. *See* ECF No. 57.

### A. The *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702 of the Federal Rules of Evidence, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir.2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: 1) the expert is qualified to testify competently regarding the matters he intends to address; 2) the methodology by which the expert reaches his conclusions is

sufficiently reliable; and 3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir.2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id*.

An expert in this Circuit may be qualified "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D.Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F.Supp.2d 1126, 1129 (M.D.Fla.2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id*. (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir.2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D.Fla.2012) (citing *Kilpatrick v. Breg, Inc.*, Case No. 08–10052–CIV, 2009 WL 2058384 (S.D.Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir.1976)).

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261–62 (internal formatting, quotation, and citation omitted). To make this determination, the district court examines: "1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community." *Id*. (citing *Quiet Tech. DC–8, Inc. v. Hurel–Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003)). "The same criteria that

are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus, the aforementioned factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. See *id*. Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *Id.* at 1258 (citing *Kumho*, 526 U.S. at 152, 119 S.Ct. 1167)).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 Fed.Appx. 816, 823 (11th Cir.2014) (quoting *Frazier*, 387 F.3d at 1262) (formatting omitted). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004) (citing *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir.2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (internal quotation marks and citations omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293, n. 7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's

weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.' " *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1321, 1325 (S.D.Fla.2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir.1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### B. Dolegowksi is not qualified to opine on website accessibility.

Dolegowski fails the *Daubert* test because he passes only one of the three required prongs. *First*, Dolegowski lacks specialized knowledge or experience on web accessibility, and his professional training and experience is in e-commerce, which is at best tangentially related to web accessibility. Dolegowski Dep., Ex 2. Dolegowski does not know the success criteria of the accessibility checking software relied on by GNC. *Id.* at 19:1-7. Nor does he usually run these tests personally. *Id.* at 20:8-11. Because he is not at least minimally qualified to opine on web accessibility, Dolegowski does not satisfy the first prong of the *Daubert* analysis.

*Second*, Dolegowski's opinions cannot pass muster under the reliability prong. Dolegowski bases his opinions not only reliable principles or methods but on "the input that he's received from people over 20 plus years of just interaction." Dolegowski Dep. 10:14-11:25. Dolegowski's network-based "expertise" cannot be tested or peer-reviewed, has no known rate of error, and GNC has put forth no evidence that this technique is accepted in the relevant scientific community. For this reason, Dolegowski does not satisfy *Daubert*'s second prong.

Third, and in despite of the above, the Court acknowledges that testimony on website accessibility would be helpful in deciding this case. However, Dolegowski's lack of experience in web accessibility and the unreliability of his opinions outweighs any potential helpfulness.[2]

---

[2] Dolegowski may very well be qualified to opine on matters within his expertise, including the cost to implement accessibility measures. That said, his e-commerce expertise does not help the Court determine whether the Website is ADA-compliant.

And so, Plaintiff's Motion to Exclude Opinions and Testimony of Paul Dolegowski is **GRANTED** *in part* and the Court excludes Dolegowski's opinions on website accessibility. To the extent Dolegowski's testimony and opinions are relevant to another issue here, Plaintiff's Motion is **DENIED** and he may testify to those things.

### C. The remaining evidence suggests the Website still violates the ADA.

With the foregoing in mind, the remaining evidence in the record suggests that the Website is inaccessible. Michael McCaffrey—Gomez's expert—tested the Website and found it had 77 percent and 64 percent compliance on success levels AA and A, respectively. McCaffrey Dep. 170:7-9. What's more, McCaffrey opines that these errors could prevent a user from selecting a product and completing a purchase. *Id*.

Purchasing a product online is a service that, in part, forms the nexus between the Website and GNC's physical stores. The record shows that accessibility issues prevent Gomez from purchasing products. Because the inaccessibility of the Website prevents Gomez from fully enjoying a service of the physical store, GNC is discriminating against Gomez and violating the ADA.

### III. The Court Cannot Grant Summary Judgment as to remedy

GNC argues—correctly—that Gomez has provided no support than WCAG 2.0 is an appropriate remedy. Even if WCAG 2.0 is the appropriate standard, the record is silent on which success level is most appropriate. Therefore, the Court cannot grant motion for summary judgment as to remedy.[3]

---

[3] While declining to rule on this explicitly at this point, the Court finds *highly* persuasive the number of cases adopting WCAG 2.0 Success Level AA as the appropriate standard to measure accessibility. *See, e.g., Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 370 (E.D.N.Y. 2017) (concluding that "the Web Content Accessibility Guidelines (WCAG) 2.0 Level AA, [] are hereby determined by the court to be an appropriate standard to judge whether Defendant is in compliance with any accessibility requirements of the ADA"); *Hindel v. Husted*, No. 2:15-CV-3061, 2017 WL 432839, at *7 (S.D. Ohio Feb. 1, 2017) (ordering Defendant the Ohio Secretary of State to "conform[] with the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria"); *Del-Orden v. Outback Steakhouse of Florida, LLC*, Case No. 16-cv-2319 (S.D.N.Y. Sept. 13, 2016) (Oetken, J.) (DE 13) (requiring Outback to bring the websites of "its parents, subsidiaries, and related entities ... into substantial conformance with the Web Content Accessibility Guidelines (WCAG) 2.0 Level AA").

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED and ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment is **GRANTED** *as to liability* and **DENIED** *as to remedy*.
2. Plaintiff's Motion to Exclude Opinions and Testimony of Paul Dolegowski is **GRANTED** as to expert opinions on web accessibility but **DENIED** as to all other matters.

**DONE and ORDERED** in Chambers, in Miami, Florida, 29th day of August 2018.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of Record*